UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**BANKMANAGERS CORPORATION,
and PARK BANK,**

          Plaintiffs,

      -vs-                                                  Case No. 11-C-871

**FEDERAL INSURANCE COMPANY,
and KOSS CORPORATION,**

          Defendants.

## DECISION AND ORDER

The Plaintiffs, Bankmanagers Corporation ("Bankmanagers") and its subsidiary, Park Bank (collectively the "Plaintiffs"), filed this declaratory judgment action against the Defendants, Federal Insurance Company ("Federal") and Koss Corporation ("Koss"). The Plaintiffs seek a declaration of Federal's obligation to indemnify the Plaintiffs under a financial institution bond, Community Bank Bond No. 81944155 (the "Bond"). More specifically, the question presented is whether the Bond provides indemnification for losses that the Plaintiffs are incurring or may incur as a result of Park Bank's issuance of cashier's checks as a result of embezzlement by Sujata Sachdeva ("Sachdeva"), a high-level Koss employee with unbridled access to Koss's corporate accounts at Park Bank.

Subject matter jurisdiction is predicated on 28 U.S.C. § 1332 which requires that parties be citizens of different states and the amount in controversy, exclusive of interest and costs, be $75,000. The Bankmanagers is a Wisconsin corporation with its principal place of business in Wisconsin. Park Bank is a Wisconsin state bank, with its principal place of business in Wisconsin. Federal is an Indiana stock insurance company, with its principal corporate office in New Jersey. Koss is a Delaware corporation with its principal place of business in Wisconsin.

Currently pending in this action are the Plaintiffs' motions to reset the party status of Koss and to strike Koss's answer as untimely; Federal's motion seeking to dismiss or realign Koss as a party on the ground that it was improperly joined and to dismiss the claims against it for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Also pending is Koss's motion to set aside the default against it.

The Court grants Federal's motions and dismisses the Plaintiffs' claims and this action. Therefore, the remaining motions are moot and denied on that ground.

## BACKGROUND[1]

Infamously, beginning about June 1997 through December 2009, Sachdeva, who was Koss's Vice President of Accounting, embezzled tens of millions of dollars from Koss, leading to numerous direct and indirect legal consequences, including this action. The instant action is concerned with Sachdeva's conversion of funds from Koss's deposit

---

[1] Unless otherwise stated the background is based on the Complaint whose factual allegations are accepted as true for purposes of this recitation.

accounts at Park Bank in the following manner: Sachdeva, or a Koss employee acting under her direction and control, telephoned Park Bank and instructed bank personnel to issue cashier's checks for a specified amount from a specified Koss account – purchased with Koss funds on deposit at Park Bank – payable to Sachdeva's personal creditors and others and to place the checks in sealed envelopes addressed to Sachdeva at Koss. Park Bank personnel complied. Thereafter, Sachdeva dispatched a particular Koss employee with orders to retrieve the envelope and deliver it only to her at Koss. This procedure was routinely repeated, during the 12 years from June 1997 to December 2009, enabling Sachdeva to convert and disburse at least 570 checks to her personal creditors and others which resulted in losses to Koss totaling $17,371,631.11. (Compl. ¶¶ 7-15.) (ECF No. 1.)

Koss and Park Bank are currently litigating *Koss Corporation v. Park Bank*, No. 2010-CV-21290, in the Circuit Court for Milwaukee County, Wisconsin ("the 21290 action"), in which Koss alleges that Park Bank was negligent with respect to the issuance of cashier's checks from Koss's accounts and the disbursement of Koss's funds through cashier's checks with funds payable on Koss's accounts. Koss seeks reimbursement of its $17,371,631.11 loss. (*Id.* at ¶¶ 18-20 & Ex. A (ECF No. 1-1).)

Upon Koss's commencement of the 21290 action, Park Bank filed a claim with Federal, the underwriter of the Bond,[2] which is a policy of insurance under which each Plaintiff was a named insured. (*Id.* at ¶¶ 21-23 & Ex. B (the Bond) (ECF No. 1-2).) Park

---
[2] The Bond is a type of insurance policy that is discussed *infra* at 9-10, and is commonly referred to, in the case law and scholarly literature, as a Financial Institution Bond, Standard Form No. 24, Banker's Blanket Bond or Fidelity Bond,.

-3-

Bank claimed that Federal was obligated to indemnify Park Bank for attorney fees and costs associated with the 21290 action, and for any losses incurred by Park Bank, if Koss prevails in that action. (*Id.* at ¶ 24.) Park Bank also claimed that the deductible amount set forth in insuring clause 2 of the Bond did not apply as an offset or deduction for attorney fees and costs incurred in the 21290 action. (*Id.*) Federal denied the claim.

Before filing this declaratory judgment action, the Plaintiffs' counsel sent Koss's counsel a copy of the draft complaint against Federal and requested that Koss participate as a plaintiff. After Koss declined to join the lawsuit as a voluntary plaintiff, (*id.*, Ex. C.) (ECF No. 1-3), the Plaintiffs named Koss as a defendant and served both Koss and Federal with the Complaint and Summons on September 15, 2011.

In this action, the Plaintiffs seek a declaration that: (1) in the event Koss prevails in the 21290 action and Park Bank incurs a loss as a result thereof, Federal has a contractual duty to indemnify Park Bank pursuant to the *On Premises* insuring clause 2 of the Bond; (2) regardless of whether Koss prevails in the 21290 action, Federal has a contractual duty to indemnify Park Bank for attorney fees and costs incurred in defending the suit pursuant to the *Court Costs and Attorneys' Fees* general agreement of the Bond; and (3) pursuant to general agreement 5 of the Bond, the deductible amount associated with the *On Premises* insuring clause 2 does not apply to Federal's obligation to indemnify Park Bank for attorney fees and costs incurred in defending the 21290 action. (*Id.* at ¶ 32.) The Plaintiffs also request an award of taxable costs and disbursements, including actual attorney

fees. The Complaint does not assert any claims against Koss.

On October 19, 2011, the Plaintiffs filed a motion requesting an order realigning Koss as a party plaintiff and entry of Koss's default. The Clerk entered default on October 21, 2011. Later on October 21, 2011, Koss filed an answer.

On October 31, 2011, Koss filed a motion to set aside the default and extend time to answer. On October 31, 2011, the Plaintiffs filed a motion to strike Koss's answer as untimely.

On October 21, 2011, Federal filed a motion for dismissal of Koss as a party contending Koss was improperly joined; and for dismissal of the Plaintiffs' claims against Federal for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). The issues raised by Federal's motion address the pith of this litigation.

## DISMISSAL OF KOSS

Federal moves the Court to dismiss Koss as a party to this action on grounds that it was improperly joined. For the reasons that follow, the motion is granted. The Court's determination moots Koss's motion to set aside the default and the Plaintiffs' motion to realign Koss and to strike Koss's answer and, therefore, those motions are denied.

After counsel for Koss declined the Plaintiffs' invitation to join this proceeding against Federal as a voluntary party plaintiff, the Plaintiffs named Koss as a defendant, alleging that it is a "necessary and proper party to this litigation" under Wisconsin law and Federal Rule of Civil Procedure 19(a). (*Id.* at ¶ 28.) The Plaintiffs maintain that, although

-5-

Koss's interests are aligned with their interests in the instant litigation, because Koss declined to voluntarily participate as a plaintiff, it was proper for them to join Koss as a defendant and move for Koss's realignment. (Pls.' Mem. Mot. Realign 2-5.) (ECF No. 9.) This is incorrect.

As pronounced in *Independent Wireless Telegraph Company v. Radio Corporation of America*, 269 U.S. 459 (1926), a plaintiff has the following options for joining a recalcitrant party that is necessary to the action: If the party's citizenship is diverse from the plaintiff, the recalcitrant party should be named as a defendant, served with process, and then realigned by the Court. *Id*. at 468-69. Or, if the party's joinder as a defendant would destroy diversity of citizenship and deprive the court of subject-matter jurisdiction, the recalcitrant party can be named without its consent as an involuntary plaintiff. *Id*. at 462 (finding this procedure is necessary to prevent a failure of justice in the plaintiff-licensee's patent infringement prosecution, where substantive law requires that the patentee is a party plaintiff to the licensee's action.) The latter option has been codified in federal practice under Rule 19. *See* Fed. R. Civ. P. 19(a)(2) ("If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.")

In the instant action, heedless of the fact that the Plaintiffs and Koss are citizens of Wisconsin for diversity purposes, (*see* Compl. ¶¶ 3-4, 6), the Plaintiffs chose the former. However, as Federal notes, neither route would be proper in this case because each

-6-

presumes that Koss is a necessary party. (Fed.'s Br. Mot. Dismiss 17.) (ECF No. 11.) Koss is not.

Koss has no legally cognizable interest in the Plaintiffs' claim under the Bond. The Bond at issue is a two-party agreement for indemnification by the underwriter if the insured incurs certain losses directly resulting from certain risks; it is not a form of liability insurance. *See Tri City Nat'l Bank v. Fed. Ins. Co.*, 268 Wis. 2d 785, 796-97, 674 N.W.2d 617, 622 (Wis. Ct. App. 2003) (explaining the differences between liability insurance and the type of bond at issue in this case).

While the nature and scope of the Bond is discussed in relation to Federal's Rule 12(b)(6) motion, for the purposes of Koss – which is not a named insured – it suffices to rely on the following language of the Bond: "[t]his Bond affords coverage only in favor of the ASSURED. No claim, suit, action or legal proceeding shall be brought under this Bond by anyone other than the ASSURED." (Compl. Ex. B 32); *see also* Karen Wildau, *Evolving Law of Third-Party Claims Under Fidelity Bonds: When Is Third-Party Recovery Allowed?*, 25 Tort & Ins. L.J. 92, 92-93 (1989) ("[T]he 1980 and 1986 editions of Standard Form 24, Bankers Blanket Bond (now called the Financial Institution Bond) have strengthened the notion [which was already relatively uncontroversial] that the bond is a contract for the benefit only of the insured. [The 'Notice/Proof—Legal Proceedings' section of each bond] provides: 'This bond affords coverage only in favor of the Insured. No suit, action or legal proceedings shall be brought hereunder by anyone other than the named

-7-

Insured.'").[3]

The Plaintiffs have not responded to Federal's assertion that Koss has no legally cognizable interest in the Plaintiffs' claim under the Bond. Regardless, the Court agrees that Koss has no interest in the Plaintiffs' claim against Federal and dismisses Koss from this action.

### DISMISSAL OF CLAIMS AGAINST FEDERAL

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Federal moves the Court to dismiss the claims against it contending that: (1) the Complaint fails to state a claim covered by the "on premises" insuring clause because it does not allege that Sachdeva was ever physically present on Park Bank's premises;[4] and (2) the "court costs and attorneys' fees" general agreement does not provide coverage when the claimed losses are not covered under the Bond.[5] (Fed.'s Mot. Dismiss 3.) For the following reasons, Federal's motion is granted and each of the Plaintiffs' claims is dismissed.

Rule 12(b)(6) allows the court to dismiss an action when the complaint "fails to state a claim upon which relief can be granted." In deciding such a motion, the Court must

---

[3] The Wisconsin Supreme Court quoted the foregoing portions of the Wildau article in *Tri City Nat'l Bank*, 268 Wis. 2d at 796-97, 674 N.W.2d at 622.

[4] Federal also contends that the Plaintiffs' claim under the "on premises" agreement should be dismissed because the loss Koss claims in the 21290 action is not a "direct loss" covered by the "on premises" agreement and is otherwise excluded under the Bond's "indirect loss" exclusion entitled general exclusion G. (Fed.'s Br. Mot. Dismiss 3.) The "on premises" insuring clause requires (1) covered conduct that (2) directly caused a loss. The Court need not address the "direct loss" issue because it concludes that the Plaintiffs failed to allege conduct that was covered.

[5] Additionally, Federal argues that, if the Plaintiffs were found to be entitled to indemnification for court costs and attorney's fees, the $100,000 deductible applicable to the "on premises" insuring clause necessarily applies to any such costs and fees; i.e., that the Court should dismiss the Plaintiffs' third claim. (Fed.'s Br. Mot. Dismiss 3.) Because the Court concludes that the Plaintiffs are not entitled to indemnification of court costs and attorney's fees when there is no coverage under the "on premises" insuring clause, it need not address Federal's final argument.

-8-

construe the complaint in a light most favorable to the Plaintiffs, accept as true all well-pleaded facts, and draw all possible inferences in the Plaintiffs' favor. *Cole v. Milwaukee Area Technical Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (citing *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). Under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *See also, id.*

The movant bears the burden of proving that the complaint fails to state a claim for relief. *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint will be dismissed if it fails to include sufficient facts "to state a claim for relief that is plausible on its face." *Cole*, 634 F.3d at 903 (citations omitted).

When jurisdiction rests on diversity of citizenship under 28 U.S.C. § 1332, as it does in this case, this Court applies Wisconsin's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Wisconsin courts look to the law of the state in which an insurance policy was consummated to determine the controlling rules of construction. *Heinen v. Home Mut. Cas. Co.*, 5 Wis.2d 282, 287, 92 N.W.2d 836, 838-39 (Wis. 1958).

In this case, the location where the Bond was consummated is not clear.

-9-

Nonetheless, because the parties are in apparent agreement that Wisconsin law applies,[6] the Court will apply Wisconsin law. *See Univ. Mort. Corp. v. Wurttembergische Versighering*, No. 09-CV-1142, 2010 WL 3060655, at *2, n.2 (E.D. Wis. July 30, 2010) ("The parties assume that Wisconsin law applies to their dispute and the court will do likewise"), *aff'd*, 651 F.3d 759 (7th Cir. 2011).

Under Wisconsin law, insurance policies are construed "to give effect to the intent of the parties as expressed in the language of the policy." *Folkman v. Quamme*, 264 Wis. 2d 617, 631, 665 N.W.2d 857, 865 (Wis. 2003). When construing the policy language, the intended role of the coverage should be kept in mind; the nature and purpose of the policy as a whole also bear on the insured's reasonable expectations as to the scope of coverage and on whether the risk involved was, or should have been, contemplated by the insurer in calculating its rates. *Shelley v. Moir*, 138 Wis. 2d 218, 222, 405 N.W.2d 737, 739 (Wis. Ct. App. 1987). A construction that gives reasonable meaning to every provision is preferable to a construction that leaves part of the language meaningless. *Frost ex rel. Anderson v. Whitbeck*, 257 Wis. 2d 80, 92, 654 N.W.2d 547, 230 (Wis. 2002).

Under Wisconsin law, the words of an insurance policy are given their common and ordinary meaning. *State Farm Mut. Auto. Ins. Co. v. Gillette*, 251 Wis.2d 561, 578, 641 N.W.2d 662, 671 (Wis. 2002). Insurance polices are construed as they would be understood by a reasonable person in the position of the insured. *Am. Family Mut. Ins. Co.*

---

[6]*See* (Pls.' Br. Opp'n Federal's Mot. Dismiss at 5) (ECF No. 28) *and* (Federal's Reply Br. 1-2) (ECF. No. 32) (disagreeing about which Wisconsin rule of construction applies to the Bond).

-10-

*v. Am. Girl, Inc.,* 268 Wis.2d 16, 32, 673 N.W.2d 65, 73 (Wis. 2004). However, Wisconsin courts do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium. *Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co.,* 233 Wis.2d 314, 328, 607 N.W.2d 276, 283 (Wis. 2000).

Moreover, "if there is no ambiguity in the language of an insurance policy, it is enforced as written, without resort to rules of construction or applicable principles of case law." *Folkman*, 264 Wis. 2d at 631, 665 N.W.2d at 864. Ambiguity arises when policy language is susceptible to more than one reasonable interpretation. *Danbeck v. Am. Family Mut. Ins. Co.*, 245 Wis. 2d 186, 193, 629 N.W.2d 150, 154 (Wis. 2001).

Finally, financial institution bonds were "created by the bonding industry in conjunction with insurers." *Tri City*, 268 Wis. 2d at 795, 674 N.W.2d at 621. Therefore, "should there be any ambiguity, the wording [of a financial institution bond] is not construed strictly against the drafter because the justification behind the rule – unequal bargaining power – has been eliminated." *See id.* (citing *State Bank of Viroqua v. Capital Indem. Corp.*, 61 Wis. 2d 699, 702 n.1, 214 N.W.2d 42, 43 n.1 (Wis. 1974) ("These bonds are not the usual contracts of adhesion and the familiar rule of interpreting a contract strictly against the insurer and liberally in favor of the insured should not apply.")).

### *1. On Premises*

The gist of this action is a disagreement regarding whether Sachdeva's embezzlement as alleged in the Complaint constitutes conduct covered by the "on premises" insuring clause of the Bond. This insuring clause provides that Federal will indemnify the Plaintiffs for "Loss of Property resulting directly from . . . false pretenses, or common law or statutory larceny, committed by a natural person while on the premises of [Park Bank] . . . ." (Bond at 3.)

In the absence of authority directly on point, this Court must determine the issue of state law as it believes the Wisconsin Supreme Court would. *Liberty Mut. Fire Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1100 (7th Cir. 2003). Typically, if there are state appellate court decisions addressing the issue, the federal court gives those decisions great weight. *See id.* In this case, however, no state appellate court decisions addressing the issue have been found by the Court or by the parties. Indeed, this Court has not found any Wisconsin decision interpreting a similar "on premises" clause.[7] Although some federal judges are "timid" about deciding issues of state law because they fear that they will confuse the law, the fear is ill-founded because state courts are not bound by federal courts' interpretations of state law. *Diginet, Inc. v. W. Union ATS, Inc.*, 958 F.2d 1388, 1395 (7th Cir. 1992).

The Bond at issue is a Financial Institution Bond Standard Form No. 24 and

---

[7]*Racine Cnty. Nat'l Bank v. Aetna Cas. & S. Co.,* 56 Wis.2d 830, 834-35, 203 N.W.2d 145, 148 (Wis. 1973) addressed an earlier and different version of an "on premises" insuring clause.

-12-

has a well-documented history. *See Private Bank & Trust Co. v. Progressive Cas. Ins. Co.*, 409 F.3d 814, 816 (7th Cir. 2005) (citing 9A John Alan Appelman & Jean Appelman, *Insurance Law and Practice* § 5701, 375-76 (1981); Peter I. Broeman, *An Overview of the Financial Institution Bond, Standard Form No. 24*, 110 Banking L. J. 439, 442-43 (1993)). The "on premises" agreement is one of six basic insuring agreements under which the underwriter agrees to indemnify the insured for certain specific risks in the banking industry. Broeman, *An Overview of the Financial Institution Bond*, at 439-40. Importantly, the financial institution bond underwent a revision in 1980 that included refining the scope of the "on premises" agreement such that it is limited to acts committed by persons present on the premises of the insured. *See Private Bank & Trust Co.,* 409 F.3d at 817 (citing *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co.*, 989 F.2d 635, 639 (3rd Cir. 1993) (reproducing text of the pre-1980 "on premises" agreement)).

The Plaintiffs allege that Sachdeva's conduct was "ongoing larceny" and thus was covered by the Bond. (Compl. ¶ 7.) The Plaintiffs posit that larceny for the purposes of this case is "the unlawful taking of personal property with intent to deprive the rightful owner of it permanently." (Pls. Br. Opp'n Fed.'s Mot. Dismiss ("Pls.' Resp.") 11.) (ECF No. 28.) According to the Plaintiffs, Sachdeva completed the act of larceny only upon her couriers' physical retrieval of the misappropriated cashier's checks while on the premises of Park Bank. (*Id.* at 11-14.)

The Plaintiffs' theory of coverage is, at best, incomplete. The Complaint does

-13-

not allege that Sachdeva's couriers were complicit in the larceny. Rather, it states simply that her couriers or courier was "at all times acting under Sachdeva's express and explicit direction and control, as her agent and proxy." (Compl. ¶ 14.) As stated, no act constituting larceny or single element of larceny was committed on-premises because the alleged larcener did not set foot in Park Bank. The Plaintiffs' conclusory statement that "Sachdeva's diversion of [Koss's] funds as set forth and described in [the Complaint] constitutes common law and/or statutory larceny," (see *id.* ¶ 17), does not bind this Court. *See Ashcroft*, 556 U.S. at 678. Therefore, the Plaintiffs' allegations fail to satisfy the unambiguous requirement of the "on premises" agreement that the perpetrator be physically present on the premises of the insured. *See Oritani*, 989 F.2d at 641 (quoting *S. Nat'l Bank of N.C. v. United Pac. Ins. Co.*, 864 F.2d 329, 332 (4th Cir. 1989) ("The crucial factor in determining whether the 'on premises' requirement has been satisfied is . . . [the perpetrator's] location when he engages in misrepresentations.")).

Sachdeva defrauded her employer by telephonic transactions in which she purchased cashier's checks from Park Bank with Koss's funds and named her personal creditors as payees.[8] Sachdeva caused an actual loss to Koss when bank personnel complied with her request and issued a cashier's check. She did not, as the Plaintiffs suggest, cause a loss to Koss when her couriers obtained possession of the cashier's checks, (Pls.' Resp. 14); her courier's retrieval of a check simply allowed her to deliver the cashier's check to her

---

[8]A cashier's check is "a draft with respect to which the drawer and drawee are the same bank." Wis. Stat. § 403.104(7). It is purchased by the customer-remittur and drawn by the bank as a guarantee backed by the bank's – rather than the remittur's – resources. *See generally* 5 William D. Hawkland, J. Fairfax Leary, Jr., Richard M. Alderman, *Uniform Commercial Code Series* § 4-403:11.

-14-

creditors so that it could be presented to the bank for payment by the bank to the creditor and from the resources of the bank.

There is ample authority that off-premises fraud perpetrated by telephone such as Sachdeva's embezzlement is not a risk the drafters of the financial institution bond intended to insure against under the "on premises" agreement. *See Private Bank*, 409 F.3d at 818 ("Nothing in the language of the 'on premises' clause suggests that coverage is extended for losses that occur through telephonic banking."); *see also, Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co.,* 989 F.2d 635, 642 (3rd Cir. 1993) (quoting The American Banker's Association, *Digest of Bank Insurance* at 438 (4th ed. 1981)) ("Loss involving false pretenses by a telephone call are not covered, unless it can be proved that the call came from a person who was on the premises of the insured bank.").

Further, the drafters specifically designed the "on premises" agreement to exclude such losses. *See S. Nat'l Bank of N.C. v. United Pac. Ins. Co.,* 864 F.2d 329, 332 (4th Cir. 1989) (citing American Banker's Association, *Digest of Bank Insurance* § 1.3.12 (4th ed. 1981 & Supp.1984) ("Commentators, including those in the banking industry, have emphasized that the 'on premises' requirement in standard blanket bonds is designed to exclude coverage for losses from fraud perpetrated by telephone or computer, except in those rare instances where the perpetrator phones or uses a computer hook-up from the property of the bank itself or from the property of a custodian entrusted by the bank to safeguard the funds.")); *see also Oritani*, 989 F.2d at 640, 642 (quoting John Robert James, *A Banker's*

-15-

*Look at the Revised Blanket Bond*, Risk Management, Jan. 1981, at 22) ("The risks of theft, false pretenses, common law or statutory larceny have been restricted to crimes perpetrated by a person present in an office or on the premises of the insured bank. . . the [bond's] revised wording clearly indicates that loss from crimes perpetrated off the premises by telephone or other means is not covered.").) This Court will not bind Federal to a risk it did not contemplate when it agreed to insure Park Bank, nor one it purposefully excluded when it designed that agreement. *See Shelley*, 138 Wis. 2d at 222, 405 N.W.2d at 739.

Because neither Sachdeva nor any other person engaged in conduct described in the "on premises" clause while on bank premises, finding coverage in this case would render meaningless the language of the "on premises" insuring clause. *See S. Nat'l*, 864 F.2d at 332 ("The 'on premises' language has meaning only if it requires the person who perpetrates the fraud to be on the same premises where the bank's money is deposited or otherwise located at the moment when he or she makes the misrepresentation."). The preference articulated in the Wisconsin case law construing insurance policies is in accord with the Fourth Circuit's *Southern National* decision because this interpretation of the "on premises" insuring clause does not render any part of the policy language meaningless. *See Frost ex rel Anderson*, 257 Wis. 2d at 93, 654 N.W.2d at 230.

The Complaint does not allege that Sachdeva or any person complicit in her larceny was on the premises of Park Bank. Therefore, the Plaintiffs have failed to state a claim for relief and their first claim is dismissed.

-16-

### *2. Court costs and attorneys' fees and "single loss limit" deductible*

With respect whether the Plaintiffs are entitled to indemnification under the "court costs and attorneys' fees" agreement, such issue is contingent on the resolution of the Plaintiffs' first claim. The "court costs and attorneys' fees" agreement provides that Federal will indemnify the Plaintiffs for:

> court costs and reasonable attorneys' fees incurred and paid by the ASSURED in defense, whether or not successful, whether or not fully litigated on the merits and whether or not settled, of any claim, suit or legal proceeding with respect to which the ASSURED would be entitled to recover under this Bond.

(Bond at 13.) As plainly stated above, whether the insured is entitled to indemnification for court costs and attorneys' fees is conditioned upon the matter being one that the Plaintiffs "would be entitled to recover under this Bond." Therefore, because the Plaintiffs are not entitled to indemnification for the losses caused by Sachdeva to Koss under the "on premises" agreement, the Plaintiffs are not entitled to court costs and attorneys' fees and the Plaintiffs' second claim is dismissed.

### *3. Deductible*

The same reasoning applies to the parties' dispute about whether the deductible associated with the "on premises" agreement applies pursuant to the limitations of the "court costs and attorneys' fees" agreement. The issue has been mooted because it is also contingent on whether the Plaintiffs' first claim; namely, that Koss's loss directly resulted from Sachdeva's "on premises" larceny. Therefore, the Plaintiffs' third claim is also

-17-

dismissed.

## CONCLUSION

For the foregoing reasons, Federal's motion to dismiss the Plaintiffs' claims against it is granted and each of the Plaintiffs' claims for declaratory relief are dismissed. Based on the foregoing, the additional pending motions are dismissed as moot and this action is dismissed.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Federal's motion to dismiss Koss from this action and to dismiss the Plaintiffs' claims against it (ECF No. 10) is **GRANTED**;

This action is **DISMISSED**;

The Plaintiffs' motion to reset party status of Koss (ECF No. 8) is **DENIED** as moot;

Koss's motion to set aside default (ECF No. 18) is **DENIED** as moot;

The Plaintiffs' motion to strike Koss's answer (ECF No. 19) is **DENIED** as moot; and

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of September, 2012.

**BY THE COURT**:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**